NEWMAN, Circuit Judge,
dissenting.
With all respect to my colleagues, I do not share their view that it would have been obvious to do that which was indisputably unobvious to the experienced formulation scientists whose assignment was to formulate the known product drospirenone. The evidence showed, without contradiction, that it was known that micronized drospirenone rapidly degraded at the acidity of stomach acid. The evidence showed, without contradiction, that the Bayer scientists working in this field believed that the product required an enteric coating in order to prevent degradation in the stomach, upon ingestion as an oral contraceptive. Yet my colleagues, employing their own expertise, hold that since the scientists working in this field turned out to be mistaken, it would have been obvious that it was not necessary to take steps to prevent acid degradation. The court discounts the testimony of the scientists themselves, ignores the knowledge concerning this product and its instability in acid, ignores the textbook teachings, and finds that this unlikely process obviously should have been tried. That is not the law of obviousness.
The statutory criterion is whether the invention would have been obvious to persons of ordinary skill at the time of the invention, not whether it is sufficiently simple to appear obvious to judges after the discovery is finally made, despite the years of contrary belief among the scientists charged with the project. At the time that the Bayer scientists were attempting to formulate drospirenone as an oral contraceptive, the textbook teaching was that micronizing acid-sensitive products would accelerate their acid-induced degradation. See, e.g., Aulton’s Pharmaceutics: The Design and Manufacture of *1351 Medicines (advising against micronizing acid-sensitive drugs because it reduces the drug’s bioavailability). My colleagues criticize these specialists, and rule that it was nonetheless obvious to conduct experiments that they believed would not work. The court rules that the scientists should have “tried” that which they believed would fail, and that when they eventually did try this unlikely formulation, and it succeeded, it was obvious to do so.
The unusual physiological behavior of drospirenone in the stomach was not known; this knowledge followed as scientific explanation; it did not precede the invention in suit. There was no evidence to reasonably suggest that micronized drospirenone was likely to be usable, with 99+ percent consistency of effectiveness, without any protection from degradation by stomach acid. A usable contraceptive requires virtually complete effectiveness, and the standard confronting the Bayer scientists was high. Unlike the unrelated drugs cited by the panel majority, contraceptives require complete effectiveness. Previously known oral contraceptives such as progesterone and spironolactone are not acid sensitive, and drospirenone presented a highly specific challenge to the formulation scientists.' The Bayer scientists believed that the way of avoiding the known acid degradation of drospirenone was to protect it from acid. My colleagues, however, find that it would have been obvious to expose it to acid, although it was not obvious to the scientists working on the project.
“Obviousness” requires that the subject matter was obvious to persons of ordinary skill in the field of the invention. The law does not hold it “obvious to try” experiments that contravene conventional knowledge, and that are not deemed reasonably likely to succeed. The evidence in this case is a better measure of obviousness than is the hindsight science of judges, for the scientists who eventually made this discovery testified, without dispute, that they did not believe an uncoated micronized product would meet the demanding criteria of contraceptive effectiveness. The Court in KSR International Co. v. Teleflex Inc., 550 U.S. 398, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) explained that the standard for “obvious to try” is whether there was a “reasonable expectation of success” at the time. It was undisputed that there was not. It was undisputed that it was not reasonably expected that uncoated micronized drospirenone would be 99 + % effective as an oral contraceptive when ingested into the acidic stomach, when it was known to degrade rapidly in acid.
The district court stated that micronization was a “viable” option, and that although success was “uncertain,” the invention was obvious to try. However, “viability” is not the standard. “Viability” implies that the experiment may or may not succeed. What the law requires is not guesswork, not dumb luck, but a reasonable degree of predictability of success. My colleagues depart from the statutory standard, in ruling that persons of ordinary skill would have conducted experiments that were expected to fail. Nothing in the prior art teaches the likelihood of success of ingestion of uncoated micronized drospirenone; what is taught is the likelihood of failure.
The invention must be viewed as a whole. With the existing knowledge that drospirenone is both hydrophobic and that it degrades rapidly in acid, and the existing knowledge that micronization, although useful to counteract a drug’s hydrophobic properties, renders the drug even more *1352 susceptible to acid degradation, it was not shown that a person of ordinary skill in this field would have had a reasonable expectation of achieving complete contraceptive bioavailability and effectiveness with uncoated micronized drospirenone. The contrary view has surfaced only in this litigation-induced argument. The exercise of judicial expertise to override the clear evidence of how persons of skill in this field actually behaved, is inappropriate.
I respectfully dissent.